Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| I.P., and C.P.,<br><br>Plaintiffs,<br><br>vs.<br><br>AETNA LIFE INSURANCE COMPANY, and the SALESFORCE MEDICAL BENEFITS PLAN.<br><br>Defendants. | COMPLAINT<br><br>Case No. 4:21-cv-00068-DN |

Plaintiffs I.P. and C.P., through their undersigned counsel, complain and allege against Defendants Aetna Life Insurance Company ("Aetna") and the Salesforce Medical Benefits Plan ("the Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. I.P. and C.P. are natural persons residing in San Mateo County, California. I.P. is C.P.'s father.

1

2. Aetna is an insurance company headquartered in Hartford, Connecticut and was the third-party claims administrator for the Plan as well as the fiduciary under ERISA for the Plan during the treatment at issue in this case.

3. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). I.P. was a participant in the Plan and C.P. was a beneficiary of the Plan at all relevant times.

4. C.P. received medical care and treatment at Open Sky Wilderness Therapy ("Open Sky") from June 24, 2018, to September 18, 2018. Open Sky is a licensed treatment facility with campuses in Colorado and Utah. Open Sky provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. Aetna denied claims for payment of C.P.'s medical expenses in connection with her treatment at Open Sky.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because Aetna does business in Utah, and Open Sky has a campus in Utah. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

8. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"),

an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### C.P.'s Developmental History and Medical Background

9. When C.P. was a young child, I.P. was often away on business trips. Most of the time he was away, C.P. was in her mother's care and was verbally, physically, and emotionally abused. In order to cope with this abuse, C.P. began self-harming by cutting and around the time that she was in the seventh grade she attempted to commit suicide.

10. C.P. started therapy and she and I.P. moved away from her mother. I.P. was then granted sole custody of C.P. The trauma from years of abuse however took their toll and C.P. had difficulty sleeping and often refused to attend school or even leave the apartment. C.P. was then admitted to a residential treatment program.

11. In June of 2017, C.P. was raped by a family friend. This only served to intensify her trauma and C.P. began self-medicating through alcohol and drug abuse. C.P. was then admitted to a residential treatment program focused on treating both her mental health and substance abuse disorders.

12. Initially C.P. made great progress, but she relapsed shortly after discharge and was readmitted. C.P.'s second admission was significantly less effective at treating her issues and C.P. was subsequently admitted to Open Sky and was diagnosed with post-traumatic stress disorder, major depressive disorder (recurrent moderate), alcohol use disorder (severe), cannabis use disorder (severe), parent-child relational problem, and a personal history of self-harm.

//

**Open Sky**

13. C.P. was admitted to Open Sky on June 24, 2018.

14. In a letter dated November 1, 2018, Aetna denied payment for C.P.'s treatment. The letter, signed only by Aetna gave the following justification for the denial of payment:

    > We reviewed information received about the member's condition and circumstances in the member's benefit plan. We are denying coverage for residential treatment. Treatment in wilderness programs or other similar programs is excluded under the plan. Therefore, residential treatment provided by a wilderness treatment program is not covered under the terms of the plan.

15. On January 14, 2019, I.P. appealed the denial of payment for C.P.'s treatment via a representative from the Mental Health & Autism Insurance Project. I.P. wrote that Open Sky provided C.P. with an individualized treatment plan which allowed her to make significant progress in successfully treating her mental health conditions and addressing her history of trauma.

16. I.P. pointed out that Open Sky was licensed by the State of Colorado as a residential treatment facility. He stated that Open Sky met the Plan's definition of a residential treatment facility as it met the requirement of being an "institution specifically licensed as a residential treatment facility by applicable state and federal law." I.P. contended that Open Sky also met the Plan's definition of an "eligible provider."

17. I.P. wrote that Aetna's blanket exclusion of Wilderness Programs was a violation of MHPAEA. He pointed out that MHPAEA required insurers to offer coverage for mental health benefits in a manner that was no more restrictive than the coverage offered for comparable medical or surgical benefits.

18. I.P. contended that Aetna violated MHPAEA by explicitly excluding coverage for wilderness programs "regardless of whether the provider is a state licensed residential

treatment center." I.P. stated that skilled nursing centers were some of the medical or surgical analogues to the treatment C.P. received at Open Sky and argued that Aetna did not restrict payment for skilled nursing facilities based on the setting where the care was provided.

19. I.P. wrote that Aetna's wilderness exclusion was targeted specifically at mental health benefits and discriminated against wilderness programs based on facility type and geographic location.

20. In a letter dated February 12, 2019, Aetna. upheld the denial of payment for C.P.'s treatment under the following justification:

> According to the member's medical plan, there is no coverage for wilderness therapy services. Based on Aetna's precertification system, these services were reviewed and were denied as a benefit exclusion. Due to this, the claim was denied correctly and no payment will be issued.

21. On March 26, 2019, I.P. submitted a level two appeal of the denial of payment for C.P.'s treatment. I.P. once again drafted the appeal through a representative from the Mental Health & Autism Insurance Project.

22. I.P. wrote that Aetna had not contested the medical necessity of C.P.'s treatment but had instead denied payment based on an alleged benefit exclusion. I.P. reiterated that Open Sky was a licensed residential treatment facility which utilized a multidisciplinary team of licensed healthcare professionals.

23. I.P. wrote that because his insurance plan covered inpatient residential treatment and because C.P. received treatment in a facility licensed in accordance with state and federal law that was acting in accordance with the scope of that license, C.P.'s treatment should have been a covered benefit. I.P. also contended that Open Sky met the Plan's definition of a residential treatment facility.

24. I.P. again contended that Aetna's blanket exclusion of all mental health treatment in a wilderness environment was a violation of MHPAEA and that the statute prohibited insurers from imposing "separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits."

25. I.P. wrote that the medical or surgical equivalent of intermediate level mental health facilities such as residential treatment centers or wilderness programs were intermediate level medical or surgical facilities such as skilled nursing or rehabilitation facilities. I.P. stated that Aetna placed no restrictions on skilled nursing care equivalent to those it applied to wilderness programs.

26. I.P. offered the specific example that Aetna placed no restrictions on skilled nursing care based purely on the setting in which it was provided, yet this was its principal stated justification for denying C.P.'s treatment.

27. I.P. referenced court cases concerning wilderness treatment, including *Vorpahl, et al., v. Harvard Pilgrim Health Insurance Company* and *Gallagher, et al., vs. Empire Healthchoice Assurance Inc*. and attached these as exhibits to the appeal. As with this case, these cases concerned a differential application of facially neutral plan terms and a categorical exclusion of wilderness treatment. In each of these attached orders, the court found that the plaintiffs had plausibly pled a violation of MHPAEA and declined the defendants' motions to dismiss the MHPAEA cause of action.

28. I.P. stated that Aetna had not addressed his contention that it violated MHPAEA and thus he claimed it had failed to abide by its ERISA obligations to provide him with a full and fair review. He wrote that ERISA required insurers to take into account all comments and

other information submitted by the claimant and argued that its failure to address the primary arguments raised in his appeal did not satisfy its responsibilities under ERISA.

29. In a letter dated April 24, 2019, Aetna upheld the denial of payment for C.P.'s treatment at Open Sky. The letter was largely identical to the February 12, 2019, denial and stated in part:

> According to the member's medical plan, there is no coverage for wilderness therapy services. Based upon Aetna's precertification system, therse [sic] services were reviewed and denied as a benefit plan exclusion. Due to this, the claim was denied correctly and no reimbursement will be made.
>
> You may refer to the Summary Plan Description in the section titled "**Medical Plan Exclusions**" which states:
> "Not every medical service or supply is covered by the plan, even if prescribed, recommended, or approved by your **physician** or **dentist**. The plan covers only those services and supplies that are **medically necessary** and included in the *What the Plan Covers* section. Charges made for the following are not covered except to the extent listed under the *What the Plan Covers* section or by amendment attached to this Booklet. … Wilderness treatment programs (whether or not the program is part of a licensed **residential treatment facility**, or otherwise licensed institution), educational services, schooling or any such related or similar program, including therapeutic programs within a school setting." [1]

30. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

31. The denial of benefits for C.P.'s treatment was a breach of contract and caused I.P. to incur medical expenses that should have been paid by the Plan in an amount totaling over $49,000.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

32. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Aetna,

---

[1] Emphasis in original.

acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

33. Aetna and the Plan failed to provide coverage for C.P.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

34. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

35. I.P. expressed concern that he had not been provided with the full and fair review to which he was entitled. He stated that Aetna's failure to address the arguments he raised in the appeal process demonstrated a lack of compliance to its responsibilities under ERISA.

36. Aetna and the agents of the Plan breached their fiduciary duties to C.P. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in C.P.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of C.P.'s claims.

37. The actions of Aetna and the Plan in failing to provide coverage for C.P.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

//
//
//
//

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

38. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of Aetna's fiduciary duties.

39. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

40. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

41. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

42. The Defendants' denial of C.P.'s treatment was entirely based upon nonquantitative treatment limitations targeting geographic location and facility type for the treatment C.P. received. Open Sky was licensed to offer residential treatment services by the State of

    Colorado. However, Aetna denied payment solely because it claimed that Open Sky was a "wilderness" provider.

43. I.P. noted that Aetna never contested the medical necessity of C.P.'s treatment, but it instead denied coverage entirely based upon a blanket exclusion for wilderness care. I.P. contended that this exclusion was exclusively applied to mental health services and that medical or surgical services had no such equivalent. I.P. argued that were it not for this exclusion, C.P.'s treatment would have been approved by Aetna.

44. I.P. provided a litany of evidence and supporting court cases supporting his contention that Aetna's wilderness exclusion violated MHPAEA. However, despite the fact that this was his primary argument in both of his appeals, Aetna refused or failed to address his arguments and instead copy and pasted the same rationale for denial of care.

45. The medical necessity criteria used by Aetna for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

46. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for C.P.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does Aetna exclude or restrict coverage of medical/surgical conditions by imposing restrictions such as an acute care requirement for a sub-acute level of care. To do so, would violate not only the terms of the insurance contract, but also generally accepted standards of medical practice.

47. When Aetna and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. Aetna and the Plan evaluated C.P.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

48. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and Aetna, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

49. The violations of MHPAEA by Aetna and the Plan are breaches of fiduciary duty and also give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendants violate MHPAEA;

    (b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

    (c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

(g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

50. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for C.P.'s medically necessary treatment at Open Sky under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 23rd day of June, 2021.

By    s/ Brian S. King

                                                        Brian S. King
                                                        Attorney for Plaintiffs

County of Plaintiffs' Residence:
San Mateo County, California